IN THE MATTER OF THE FINAL ACCOUNTING OF HUMPHREY SISSON, AS ASSIGNEE OF THE ESTATE OF WILLIAM W. HERRICK AND HENRY H. AYERS, FOR THE BENEFIT OF CREDITORS.

*Preferences in an assignment — in what order paid, as between different classes, when all cannot be paid.*

By the terms of an instrument of general assignment for the benefit of creditors the assignee was directed, among other things, substantially as follows:

*Fifth.* Out of the proceeds of the copartnership property, and the surplus of the individual property, to pay all wages due the employees of the firm.

*Sixth.* Out of the said proceeds to pay three certain notes, amounting to the sum of $2,644.63, which notes were made by the firm in their firm business, and were intended to be preferred next to the employees of the said firm.

*Seventh.* Next to pay out of said proceeds the amount owing by the firm to Catherine P. Herrick, and two notes mentioned, amounting to $450, which were indorsed by Taggart Brothers, which indebtedness was intended to be preferred next to the indebtedness of the last preceding paragraph.

The one-third of the estate payable to the preferred creditors was insufficient to pay the claims mentioned in the sixth paragraph of the assignment.

In a proceeding to determine the rights of the preferred creditors, as between themselves:

*Held*, that, notwithstanding the provision of chapter 503 of the Laws of 1887, the assignor still retained the right which he formerly enjoyed to apply his estate (to the extent of the one-third thereof, to which preferences are limited by such statute), to the payment of such debts as he should designate, and in any order of preference he might designate.

That there was nothing in the statute which indicated an intention on the part of the legislature to provide how or in what manner the one-third of the estate, which might be devoted to that purpose, should be divided between the creditors of the assignor.

That if the one-third was insufficient to pay the debts comprised in any one class preferred by the assignment, no payment could properly be made upon any claim embraced in a subsequent class mentioned therein.

That the payment of each class of preferred claims was contingent and conditional upon the payment in full of the claims mentioned in the preceding classes.

APPEAL by Byron V. Taggart and William W. Taggart, preferred creditors named in a general assignment for the benefit of creditors, from an order made at the Jefferson County Special Term, and entered in the office of the clerk of the county of Jefferson on the 6th day of October, 1890, and from so much thereof as directs that

" said one-third be applied wholly toward the payment of the preferences mentioned in said first class, to wit:

| | |
|---|---:|
| To Jefferson County National Bank on note of $1,000 and interest, dated December 6, 1888.............. | $765 98 |
| To Jefferson County National Bank on note of $1,500 and interest, dated December 12, 1888............. | 1,147 32 |
| Tefft, Weller & Co............................... | 110 99 |

" And from the refusal of the court to direct that the second class of preferred creditors are entitled to share *pro rata* with the first class in one-third of said net proceeds," and from so much of said order as may be affected thereby.

On the 13th day of December, 1888, William W. Herrick and Henry H. Ayers, who constituted the firm of Herrick & Ayers, executed a general assignment for the benefit of their creditors, whereby the assignee was directed:

*First.* To pay and discharge all the just and reasonable expenses, costs and charges of executing this trust, and of carrying the same into effect, together with the lawful commissions of the party of the second part for his services in executing said trust.

*Second.* Out of the proceeds of the separate and individual property of each of said parties of the first part to pay any and all wages and salaries actually owing to the employees of said parties of the first part, respectively, at the time of the execution hereof in full; and should the individual assets of said parties of the first part, respectively, be insufficient to pay in full said claims, then to apply the same to the *pro rata* payment thereof.

*Third.* Out of the residue of the individual assets as aforesaid, if any there be, to pay the separate and individual debts of the parties of the first part, respectively, in full; and if the separate assets of either of the parties of the first part be insufficient to pay his individual indebtedness in full, to apply the residue aforesaid to the individual liabilities, respectively, *pro rata.*

*Fourth.* If any surplus remain of the net proceeds of the separate and individual property of either of the parties of the first part, after payment of his individual and separate debts and liabilities in full, to apply the surplus towards the payment of the copartnership debts and liabilities of the said parties of the first part.

*Fifth.* The net proceeds of the copartnership property, with the surplus, if any there be, of the proceeds of the individual property of the assignors, as aforesaid, shall be applied to the payment of any and all wages and salaries actually owing to the firm employees of the parties of the first part, at the time of the execution hereof, in full; and should said assets be insufficient to pay the same in full, then the payment of the same shall be *pro rata.*

*Sixth.* Out of the said proceeds, if any there be, to pay in full a certain promissory note, made by the said parties of the first part, for $1,000, with interest, dated December 6, 1888, payable three months after date thereof, indorsed by Humphrey Sisson, and now held by the Jefferson County National Bank of Watertown; also in full a certain other promissory note, made by the parties of the first part, for $1,500, with interest, dated December 12, 1888, payable three months after date thereof, indorsed by Humphrey Sisson, and now held by the Jefferson County National Bank of Watertown; also a certain other promissory note, dated September 9, 1888, for $144.63, payable two months from date thereof, and owned and held by Messrs. Tefft, Weller & Co., of New York city.

The said notes were made by the said firm in their firm business, and are intended hereby to be preferred next to employees of said firm as mentioned in the last preceding paragraph of this indenture.

*Seventh.* Next to pay out of said proceeds all such moneys as may be due or owing by said parties of the first part, as such copartners, to Catherine P. Herrick, of said city of Watertown, in full; also in full a certain promissory note, made by the parties of the first part, dated September 24, 1888, for the payment of $200 and interest three months after the date thereof, indorsed by Taggart Brothers, and now held by the Jefferson County National Bank of Watertown; also in full a certain other promissory note, dated October 8, 1888, for the payment of $250 and interest three months from the date thereof, indorsed by Taggart Brothers, and now held by the National Union Bank of Watertown.

The indebtedness mentioned in the paragraph is of said firm, and is intended hereby to be preferred next to the indebtedness mentioned in the last preceding paragraph.

It is not intended, by the preference of firm obligations mentioned in this and the last preceding paragraph, to make preference to an

amount exceeding one-third in value of the assigned estate left after deducting wages or salaries owing to said firm , and the cost and expense of executing this trust.

*Eighth.* To pay and discharge in full (after payment of said preferences), if the residue of said proceeds is sufficient, all the remaining liabilities of the said copartnership, and if the assets shall be insufficient therefor, then to apply the same to the *pro rata* payment thereof.

The one-third of the estate dedicated to the payment of the preferred creditors was insufficient to pay the claims of the first preferred creditors mentioned in the sixth paragraph of the assignment. The appellants were in the second class of the preferred creditors mentioned in the seventh paragraph. The court by the order appealed from directed that the amount designated for the payment of the preferred creditors should be distributed among the creditors mentioned in the first class or sixth paragraph of said assignment, and held that the second class of preferred creditors mentioned in the seventh paragraph were not entitled to participate in said fund, but that because of the insufficiency of said fund to pay the first class in full, the second class should be paid dividends as common creditors without preference. From that portion of the order which held that the one-third applicable to preferred debts should be wholly applied to the first class of preferred creditors the appellants appealed.

*Hannibal Smith,* for the appellants.

*Watson M. Rogers,* for Humphrey Sisson.

*Lansing & Lansing,* for Jefferson County National Bank.

MARTIN, J. :

The only question presented upon this appeal is, whether the court properly ordered the one-third of the estate dedicated to the payment of the preferred creditors of the assignors to be paid to those mentioned in the first class or sixth paragraph of the assignment, or whether it should have directed its payment to those creditors mentioned in the sixth and seventh paragraphs of the assignment *pro rata.*

· After the payment of the employees of the assignors, the creditors preferred were divided into two classes. Out of the one-third of the estate designated for that purpose, those belonging to the first class were to be paid. After they were paid in full, those belonging to the second class were to be paid out of the remainder of that portion of the estate. The fund was insufficient to pay the first class in full, and hence, according to the terms of the assignment, there was nothing in the preferred creditors' fund which, under the provisions of the assignment, was applicable to debts in the second class. Whether the distribution of this fund among the preferred creditors was to be governed by the provisions of the assignment, is the real question in this case.

Anterior to the enactment of chapter 503 of Laws of 1887, a failing debtor making a general assignment for the benefit of his creditors, possessed the right to prefer such of his creditors as he saw fit to the full amount of his estate. While the right to thus prefer creditors was fully established and generally understood, the legislature passed the following statute: "In all general assignments of the estates of debtors for the benefit of creditors hereafter made, any preference created therein (other than for the wages or salaries of employees under chapter three hundred and twenty-eight of the laws of eighteen hundred and eighty-four, and chapter two hundred and eighty-three of the laws of eighteen hundred and eighty-six) shall not be valid except to the amount of one-third in value of the assigned estate left after deducting such wages or salaries, and the costs and expenses of executing such trust ; and should said one-third of the assets of the assignor or assignors be insufficient to pay in full the preferred claims to which, under the provisions of this section, the same are applicable, then said assets shall be applied to the payment of the same *pro rata* to the amount of each said preferred claims." (Chap. 503 of 1887.)

The manifest purpose of this act was to prevent failing debtors from applying more than one-third of their property to the payment of friendly creditors. The mischief which the legislature sought to correct arose from the inclination of debtors to thus apply the whole of their property. We find nothing in this statute to indicate a legislative intent to provide how or in what manner the one-third which may be devoted to that purpose shall be divided between the

creditors of the assignor. That right formerly rested in the assignor, and we think still remains with him as to the one-third of the estate which he is permitted to apply to the payment of preferred claims. The one-third he is permitted to have applied to the payment of preferred debts he may have applied to such debts as he shall designate, and in any order of preference he may indicate by his assignment. This right is in no way restricted by the act of 1887.

By the assignment in this case the assignors devoted the one-third applicable to the payment of preferred debts to the payment of the debts mentioned in class one. The whole fund was first dedicated to that purpose. If it was not sufficient to pay more, then it was dedicated to that purpose alone, and the debts in the second class were not preferred. The preference of the second class was a provisional one, depending wholly upon the sufficiency of the fund to pay the first class, with a surplus. If there was no surplus, then there was no further preference. The fund was insufficient to pay the first class, and hence the contingency upon which a preference was to be extended to the second class did not arise, and the debts mentioned therein were not preferred claims.

The provisions of the statute that, if one-third of the assets should be insufficient to pay in full the preferred claims to which the same were applicable, then they should be applied *pro rata*, obviously relates to such claims as are absolutely preferred by the provisions of the assignment, and to which, under the assignment, the assets are in fact applicable. As there were no assets that were, by the terms of the assignment, applicable to the payment of the claims of the creditors named in the second class, the preference of the claims mentioned therein being conditional, and the condition upon which such preference was based not having existed, it follows, we think, that the claims mentioned in the second class were not preferred claims to which such fund was applicable, and the creditors named in that class were not entitled to participate in the fund with the creditors named in the first class.

The effect of the statute of 1887 was simply to limit the amount which should be applied to the payment of preferred claims, and an assignor still has the power to designate the manner in which that amount shall be applied. (*Matter of Tuller*, 22 N. Y. St. Rep., 242; *Matter of Boyd*, 35 N. Y. St. Rep., 37.)

We are of the opinion that the order appealed from was right, and should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Order affirmed, with ten dollars costs and disbursements.